WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re<br>Gayle Ann Derrick<br><br>                        Debtor,<br>_____<br>Gayle Ann Derrick,<br><br>                        Appellant,<br><br>v.<br><br>National Health Finance DM, LLC; and<br>Williams & Halladay,<br><br>                        Appellees. | No. CV-13-01706-PHX-NVW<br><br>BK. 10-BK-36666-SSC<br><br>ADV. No. N/A<br><br><br><br>**ORDER** |

Appellant-Debtor Gayle Ann Derrick appeals the Bankruptcy Court's August 1, 2013 Order Disqualifying Counsel for Debtor (Doc. 45-1 at 2; Bankr. Doc. 196). Her appeal is fully briefed, and the Court heard extended oral argument on January 6, 2014. The Bankruptcy Court disqualified Isidore Yetnikoff as counsel for Derrick for violating 11 U.S.C. § 329(a) by not disclosing that Larry A. Zier, her attorney in her state court personal injury action, was also representing her in this bankruptcy proceeding.

The order of the Bankruptcy Court will be reversed. Zier's attorney–client relationship and obligations included advising Derrick to retain a bankruptcy lawyer and conferring with her and that lawyer about facts and bankruptcy strategy. But Zier was

not an "attorney representing a debtor in a case under this title" and there was no "compensation paid or agreed to be paid."  11 U.S.C. § 329(a).  Therefore, § 329 did not obligate him to file a statement of such compensation.  Any different view of the facts would be clearly erroneous.

Moreover, 28 U.S.C. § 329 deals with judicial supervision of debtors' attorney fees.  In light of this reversal, this Court need not decide whether, if this were a non-compliance with § 329, it would warrant the extreme remedy of depriving the debtor of her lawyer, rather than depriving the lawyer of his compensation.

## I.    BACKGROUND

### A.    The state court and bankruptcy court proceedings

Derrick suffered injuries in a car accident in January 2006.  Two months later, she obtained financed medical treatment from Defendant National Health Finance DM, LLC ("NHF"), and NHF recorded a statutory lien against any personal injury recovery.  In April 2009, Derrick hired Zier to represent her regarding the accident.  NHF subsequently claimed $5430 for the treatment, and Zier filed an action in state court to adjudicate a dispute over the validity of the lien and the amount NHF claimed (the "state court action").  NHF answered and counterclaimed against Derrick, Zier, and his law firm.

In November 2010, Derrick filed a bankruptcy petition.  She received a discharge in April 2011.  Despite the discharge, NHF maintained its counterclaims against Derrick.  In May 2012, Derrick retained Yetnikoff to remedy the discharge violation in bankruptcy court.  A month later, the Bankruptcy Court concluded that NHF violated the discharge injunction and ordered that Derrick be dismissed as a counter-defendant in the state court action.  The Bankruptcy Court also set an evidentiary hearing to prove damages.  That hearing was continued and has not occurred.

The state court action has continued without Derrick.  Zier remains a counter-defendant, and in July 2012, Yetnikoff substituted in as his counsel.  Yetnikoff and NHF exchanged discovery regarding the bankruptcy case, and both listed Zier as a potential

witness to the violation of the discharge injunction.  Activity in the state action appears to have stopped at least in part because the Bankruptcy Court ordered that NHF depose Derrick in the bankruptcy case before deposing her in the state court action, in which she is a witness.

In June 2013, NHF moved in the Bankruptcy Court to disqualify Yetnikoff and Zier based on a conflict of interest between Derrick and Zier.  Doc. 42 at 26–41.  After a hearing on the motion on July 23, the Bankruptcy Court disqualified both Yetnikoff and Zier for a different reason not argued—disclosure violation—and instructed NHF to submit a form of order.  *See* Doc. 12-1 at 189–90.  On August 1, 2013, the Bankruptcy Court issued the Order Disqualifying Counsel for Debtor.  Doc. 43 at 1.  That same day, Zier filed on his own behalf a "Motion to Stay Order; and Motion to Set Hearing" seeking a hearing to challenge the Bankruptcy Court's finding.  *See id.* at 2.  The Bankruptcy Court held a hearing on Zier's motion on November 14, 2013.  In both the order setting the hearing and the hearing itself, the Bankruptcy Court expounded its rationale for disqualifying Yetnikoff and Zier.  *See generally* Doc. 45-1 at 24–30; Doc. 48-1.

Derrick filed a notice of appeal in Bankruptcy Court on August 12, 2013.  *See* Doc. 1 at 1.  On September 3, 2013, she filed in the Bankruptcy Court her own motion to stay pending the appeal.  *See* Doc. 45 at 1.  She subsequently filed two emergency motions in this Court to stay the bankruptcy proceedings pending her appeal.  This Court denied the first motion as premature (Doc. 26) and granted the second on January 7, 2014 (Doc. 50).

### B.    Zier's involvement in the bankruptcy case

Derrick initially filed her bankruptcy petition without a lawyer.  When she later sought representation, Zier referred her to Yetnikoff.  On May 2, 2012, Derrick and Zier informed Yetnikoff of the discharge violation in the state proceedings, and Derrick retained Yetnikoff.  Both Yetnikoff and Derrick signed a retainer agreement, which

literally defines both Zier and Yetnikoff as "Attorney" and which covers representation "in connection with a claim/action for damages (or other appropriate relief) against or brought by [NHF] in both the Federal Bankruptcy Court, Case No. 2:10-BK-36666-SSC and/or the Maricopa County Superior Court, Case No. CV 2010-007848.  (This does not cover any representation in connection with Client's underlying Bankruptcy itself, which has been discharged[.])"  Doc. 41 at 4.  It appears to say literally that both lawyers are counsel in both cases.  As counsel acknowledged, however, the references to Zier and the state court matter were erroneous.  Zier's paralegal prepared the document for Yetnikoff, working off the retainer agreement Zier and Derrick had executed in the state court action.  But she mistakenly left in reference to Zier and the state court action in this retainer agreement, which was supposed to be for Yetnikoff and the bankruptcy enforcement proceeding.  Zier never signed it or saw it, and Yetnikoff admitted that he signed it without reading it.  The agreement does not contain any other references to Zier or co-counsel; for example, it does not discuss how any contingent fee would be divided between Yetnikoff and Zier.

On July 18, 2013, a month after NHF filed its motion to disqualify, Derrick signed an amended retainer agreement clarifying that Zier was not representing and never had represented Derrick in the bankruptcy case.  *See* Bankr. Doc. 184-1 at 2–3.  On June 23, 2013, she also executed a conflict waiver, after receiving independent legal advice, in which she acknowledged that Yetnikoff represents Zier in state court, that Zier represents Derrick in state court, and that "Zier does not represent Gayle Derrick in Bankruptcy Court."  Doc. 42 at 174.

After Derrick retained Yetnikoff, he and Zier discussed the bankruptcy case.  Yetnikoff's billing records reflect that between May 2 and June 13, 2012, he met with Zier or discussed Derrick's case with him for 2.1 hours out of the 46.2 total hours he invested in the case.  *See* Doc. 41 at 18–20.

Zier did not file an appearance on behalf of Derrick in any of the bankruptcy proceedings.  At the June 13, 2012 hearing establishing the discharge violation, Yetnikoff

- 4 -

announced for the record his appearance for Derrick and introduced Zier, who sat in the audience, *see* Bankr. Doc. 214 at 5, as "Debtor's counsel in the state action."  Doc. 12-1 at 5.  Similarly, Yetnikoff disclosed Zier's status as Derrick's state court counsel in bankruptcy court filings on May 25, May 31, and October 24, 2012.  *See* Doc. 12 at 8. Zier did not sign any bankruptcy filings or accept or apply for any attorney fees.

Derrick filed an affidavit on October 24, 2012, in support of her request for the Bankruptcy Court to find the discharge violations.  Doc. 41 at 8–13.  She asserted that when Zier suggested she seek relief in bankruptcy court, he advised her to retain a bankruptcy lawyer because he did not practice bankruptcy law.  *See id.* at 11–12. Because the affidavit, like the original retainer agreement, was fundamental to the Bankruptcy Court's disqualification decision, the pertinent language follows:

> 11.    On or about April 14, 2009, I hired the Law Office of Larry A. Zier, P.C (the "Zier Law Firm"), to represent me in my dispute with NHF.
>  . . . .
> 37.    Larry Zier explained that the Bankruptcy Court could help me, but that he did not practice bankruptcy law and suggested to me that I hire a bankruptcy lawyer to seek intervention of the Bankruptcy Court, and to enforce my bankruptcy discharge.
> 38.    I inquired if Larry Zier knew a bankruptcy lawyer, and Larry Zier suggested that I hire Isidore Yetnikoff, of Yetnikoff Law Offices, PLLC, since Larry Zier had previously worked with Isidore Yetnikoff on other matters.
> 39.    Since time was of the essence, I requested that Larry Zier immediately hire Isidore Yetnikoff, on my behalf, to enforce my bankruptcy discharge against NHF, and to seek all available remedies in Bankruptcy Court.
> 40.    On or about May 2, 2012, Isidore Yetnikoff agreed to represent me in Bankruptcy Court to enforce the bankruptcy discharge against NHF.
> 41.    Thereafter, I communicated with Isidore Yetnikoff directly or indirectly through Larry Zier[] about the progress of my efforts to enforce the bankruptcy discharge against NHF.
> 42.    I also instructed Larry Zier to communicate with Isidore Yetnikoff as necessary on my behalf, since Larry Zier is a lawyer, and this matter caused me great distress.

43.     At all times, Isidore Yetnikoff performed work to enforce my bankruptcy discharge exclusively on my behalf and upon my instructions.

44.     I executed a formal engagement agreement with Isidore Yetnikoff.

*Id.* at 9, 11–12.  This affidavit describes what a referring lawyer normally and properly does with a referred lawyer concerning a matter within the referring lawyer's knowledge.

## C.     Bankruptcy Court findings

NHF's motion to disqualify Yetnikoff and Zier argued that Yetnikoff "has a conflict of interest because of his concurrent representation of [Zier] in the State Court matter and his client in this matter, Gayle Derrick," that Zier "has a direct conflict of interest with his client, Gayle Derrick, in this [bankruptcy] matter and a lawsuit in State Court between Creditor NHF and Zier," and that both conflicts are apparent and incurable.  Doc. 42 at 26.  NHF asserted that these manifest conflicts violated Arizona Rule of Professional Conduct 1.7.  *Id.* at 34–40.

At the first hearing on the disqualification, NHF presented the alleged conflict to the Bankruptcy Court, which concluded that NHF had raised potential disclosure problems but not necessarily demonstrated a conflict of interest.  *See* Doc. 12-1 at 185 ("I have other issues, but not necessarily focusing on what you're focusing on.").

Indeed, in its colloquy with Yetnikoff on behalf of Derrick, the Bankruptcy Court expressed concern that Zier was listed in the original retainer agreement but was not disclosed as required by federal statute and the bankruptcy rules.  *See id.* at 186 ("I'm looking at the retainer agreement; I'm looking at when it was executed.  You specifically refer to the bankruptcy case; it refers to co-counsel, and that's not disclosed to me. . . . That's a [11 U.S.C.] § 329 problem, and it's also Bankruptcy Rule 2014–2016 problem.").

Concluding that Yetnikoff had not complied with Arizona ethical rules, the bankruptcy code's disclosure requirements, or his duty of candor to the tribunal, the Bankruptcy Court orally granted the motion and disqualified Yetnikoff and Zier because

there was "no way to cure this problem; it's a lack of fundamental disclosure to this Court." *Id.* at 190.  This was not the basis of NHF's motion for disqualification of counsel.

Subsequently, the Bankruptcy Court issued a one-page order disqualifying Yetnikoff and Zier.  The order concluded that Yetnikoff and Zier "did not properly disclose their representation of the Debtor . . . , pursuant to 11 U.S.C. § 329, Bankruptcy Rules 2017 and 2016(b) and *In re Crimson Investments*, 109 B.R. 397 (Bankr. D. Ariz. 1989)."  Bankr. Doc. 196 at 1.  The Bankruptcy Court similarly concluded that Yetnikoff and Zier "were not candid with the Court concerning their representation of the Debtor, as required under Ethical Rule[] 3.7 . . . ."  *Id.*

The Bankruptcy Court clarified its reasoning in later proceedings.  In the October 11, 2013 order setting for hearing Zier's motion to stay the disqualification, the Bankruptcy Court noted that the retainer agreement was "[c]ritical to the Creditor's argument, but not determinative for this Court."  Doc. 45-1 at 27.  The Bankruptcy Court relied on Derrick's affidavit in concluding that "an attorney–client relationship was created between Mr. Zier and the Debtor with regards to the bankruptcy."  *Id.* at 28 ("The Debtor, in her Affidavit, specifically states that she communicated with Mr. Yetnikoff through Mr. Zier about the progress of her efforts to enforce the bankruptcy discharge against the Creditor.").  Finally, the Bankruptcy Court expressed skepticism regarding the conflict waiver.  To clarify the information Derrick possessed in executing the conflict waiver—and the time at which she possessed it—and also to clarify the perceived discrepancy between Derrick's affidavit and Zier's assertions, the Bankruptcy Court set a hearing on the issue.  *Id.* at 28–29.

At the November 14, 2013 hearing, the Bankruptcy Court concluded that Zier had not provided sufficient evidence to warrant reconsideration of the disqualification order.  *See* Doc. 48-1 at 28.  The Bankruptcy Court allowed Zier to elect an evidentiary hearing to carry his burden of proof.  *See id.* at 32.  He subsequently elected not to request such a hearing, standing on the evidentiary record already made.  As in the previous order, the

Bankruptcy Court interpreted the retainer agreement and affidavit, taken together, to establish that Zier served as bankruptcy co-counsel. *See id.* at 10. Indeed, the Bankruptcy Court suggested that the affidavit could be sufficient to establish an attorney–client relationship in the bankruptcy proceedings without the retainer agreement. *See id.* at 12.

The record thus shows that, although the Bankruptcy Court expressed a number of concerns, the disqualification order rested on finding Zier's role required a disclosure under 11 U.S.C. § 329 (requiring "[a]ny attorney representing a debtor in a case under this title" to file "a statement of the compensation paid or agreed to be paid"), Rule 2016(b) (requiring "[e]very attorney for a debtor" to file "the statement required by § 329"), Rule 2017 (obligating bankruptcy courts to review debtors' attorney fees for excessiveness), and Ethical Rule 3.7 (generally precluding a necessary witness from also acting as counsel in that trial). The order also necessarily assumes that such a violation warrants depriving the debtor of her lawyer rather than depriving the lawyer of his compensation. Derrick appeals that order.

## II. APPELLATE JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction pursuant to 28 U.S.C. §§ 158(a)(1) and (c)(1)(A). Section 158(a)(1) gives jurisdiction for appeals from "final judgments, orders, and decrees" of the bankruptcy court. NHF does not challenge that basis for jurisdiction, and in any event the Court would exercise its discretion to hear the appeal pursuant to § 158(a)(3) (discretionary appeal "from other interlocutory orders and decrees").

A bankruptcy court order disqualifying counsel is reviewed for abuse of discretion to the extent it is discretionary. *See In re Maximus Computers, Inc.*, 278 B.R. 189, 194 (B.A.P. 9th Cir. 2002). "A bankruptcy court necessarily abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings." *In re Hansen*, 368 B.R. 868, 875 (B.A.P. 9th Cir. 2007); *see also* Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside

unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Hansen*, 368 B.R. at 874 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

The unfortunately oversimplified statement that disqualification is reviewed for abuse of discretion obscures the reality that disqualification has constituent steps that have distinct standards of review. As in anything else, embedded conclusions of law are reviewed *de novo*, findings of fact are reviewed for clear error, and exercises of discretion are reviewed for abuse of discretion. Whether facts as found and not clearly erroneous are sufficient to require or authorize disqualification is itself a question of law reviewed *de novo*.

## III.   ANALYSIS

Although the parties variously state the issues on appeal, the comprehensive questions are whether the Bankruptcy Court erred in disqualifying Yetnikoff and in concluding that Zier's involvement in the bankruptcy proceedings triggered disclosure requirements pursuant to 11 U.S.C. § 329(a).

### A.   Conflict of interest

The disqualification of counsel was not based on conflict of interest, the stated basis for NHF's motion. Moreover, conflict of interest could not justify disqualification for multiple reasons.

At the threshold, NHF has no right to challenge opposing counsel for a conflict of interest between opposing counsel's own clients. Derrick did not complain of a conflict, and Zier and Yetnikoff both denied any conflict. NHF's counsel claimed standing to seek disqualification based on her "ethical obligation" to apprise the Bankruptcy Court of

- 9 -

a violation.  Doc. 12-1 at 172.  But NHF has not made any showing that it was harmed by a conflict.  In the absence of prejudice, it is improper for NHF to seek disqualification of opposing counsel.  Arizona's conflict rules are not a tool for strategic elimination of opposing counsel.  *See Cottonwood Estates, Inc. v. Paradise Builders, Inc.*, 128 Ariz. 99, 105, 624 P.2d 296, 302 (1981) ("To call for the disqualification of opposing counsel for delay or other tactical reasons, in the absence of prejudice to either side, is a practice which will not be tolerated.").  It is the responsibility of lawyers and the state bar to ensure fidelity to the ethics rules—not opposing counsel.  *Cf. Alexander v. Superior Court In & For Maricopa Cnty.*, 141 Ariz. 157, 161, 685 P.2d 1309, 1313 (1984) ("Only in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney–client relationship of his opponent . . . .").  If NHF's counsel had a duty to report an ethical violation of another lawyer, it authorized her to report the conduct to State Bar Association disciplinary authorities.  She has made no such referral.

Second, the Bankruptcy Court did not disqualify Yetnikoff for conflict of interest.  The July 23 minute order and the August 1 order asserted only nondisclosure for disqualification.  Although the August 1 order also cites Ethical Rule 3.7, the supporting finding concerned the lawyers' lack of candor regarding the bankruptcy representation.  Both the July 23 hearing and the November 14 colloquy with Zier and Derrick confirm that disqualification turned on nondisclosure and not on conflict of interest.

Third, there was no conflict of interest.  NHF complained that Yetnikoff represented both Derrick in the bankruptcy enforcement and Zier in the state court action and that Zier was to serve as both witness and advocate in the bankruptcy proceeding, violating Rule 3.7.  *See* Doc. 39 at 14, 17.  Yetnikoff's concurrent representation of Derrick in the bankruptcy case and Zier in the state case raises no conflict because the two had mutual interests.  *See Alexander*, 141 Ariz. at 163, 685 P.2d at 1315 ("Concurrent representation does not become a problem unless the interests of the clients are adverse or become adverse during the trial.").  When pressed at oral argument, NHF could not articulate any actual conflict or posit any testimony Yetnikoff might elicit from

Zier in the bankruptcy case that could be harmful to Derrick, or vice versa.   That Yetnikoff had two clients who would testify on matters involving the other is not a conflict of interest; it is an everyday occurrence.   Preliminary discussions between counsel about possible compromise are not improper, as no such compromise can be made without informed consent of the clients.   Lawyers commonly test opposing counsel's receptiveness to settlement ideas before presenting them to their own clients, which is permissible unless the client has forbidden it.

Ethical Rule 3.7's prohibition of being attorney and witness in the same case could not apply here for two reasons.   First, Zier never did act and never proposed to act as counsel for Derrick in any bankruptcy evidentiary proceeding, much less one in which he would testify.   That is all ER 3.7 forbids.   That Zier and Derrick had an attorney–client relationship even as to this subject matter even while he is testifying raises no ethical concern.   Lawyers often testify on matters concerning clients in which they are not counsel for the hearing.   Second, if Zier did propose to appear as co-counsel at the hearing in which he testifies, ER 3.7 would be satisfied by disqualifying *him* as counsel. It could not justify disqualifying Yetnikoff.

Fourth and finally, even if there were a technical conflict, Derrick promptly obtained an independent legal opinion and executed a written waiver after NHF tried to deprive her of her lawyer.   *See* Doc. 42 at 174.   The Arizona ethics rules allow clients to waive concurrent conflicts of interest if the lawyer reasonably believes he can competently and diligently represent both clients, *see* Ethical Rule 1.7(b), and there is no basis for a court or opposing counsel to interrogate the adequacy of the waiver here.

## B.     Nondisclosure and violation of 11 U.S.C. § 329

As discussed above, the Bankruptcy Court disqualified counsel based on a violation of 11 U.S.C. § 329(a) and ancillary rules.   The Bankruptcy Court was disadvantaged in reaching this conclusion *sua sponte* without adversarial exposition and based on a written document that said that.   But the full evidence that later came out

shows that the document was a clerical error, never signed by or known to Zier, and that Derrick and both the lawyers agreed in fact that only Yetnikoff was to be counsel "in" this bankruptcy "case" and to share in any contingent fee.  The lawyers' actual course of conduct was exactly that, and not what the erroneous document recited.

From the colloquies below, the Bankruptcy Court may also have misapprehended the reach of § 329(a).  Section 329 states the following:

> (a)  Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
> (b)  If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to--
>> (1)  the estate, if the property transferred--
>>> (A)  would have been property of the estate; or
>>> (B)  was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
>> (2)  the entity that made such payment.

11 U.S.C.A. § 329.

The statute addresses court supervision of debtors' attorney fee payments.  It applies only to an "attorney representing a debtor in a case under this title," and it requires disclosure of "compensation paid or agreed to be paid."  *Id.*  The Bankruptcy Court may have thought the mere existence of an attorney–client relationship concerning bankruptcy brings the disclosure obligation of the statute into force.  Zier had an attorney–client relationship concerning the personal injury action and the related medical lien litigation in state court.  That relationship included advising his client to investigate bankruptcy protection against the lien litigation and consulting with the bankruptcy lawyer to which he referred her.  Their attorney–client relationship included that subject and communications, giving Derrick the full protection of Zier's professional obligations.

- 12 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

However, the inclusion of communications about bankruptcy within the preexisting attorney–client relationship does not suffice to bring § 329 into play. The scope of an admitted attorney–client relationship extends to anything about which attorney and client communicate that is pertinent to the existing representation. That broad scope of the relationship, for the protection of clients' reasonable expectations of confidentiality and loyalty, does not supplant the statutory language for the scope of § 329.

Nonetheless, the Bankruptcy Court concluded Zier was bankruptcy co-counsel in fact because his name was on the retainer agreement Derrick executed with Yetnikoff and because of language in Derrick's affidavit. As noted above, the reference to Zier in the original agreement is fully explained as a clerical error. Zier's paralegal prepared it mistakenly, Zier never saw it or signed it, and Yetnikoff did not read it when he signed it—or at least he did not read it carefully and did not notice that it referenced both lawyers as representing Derrick in both cases and not each lawyer in his respective case.

It referred to both the bankruptcy and the state court actions, and Yetnikoff explained to the Bankruptcy Court that Derrick simply believed she was authorizing Zier to provide Yetnikoff with facts from the state court action. *See* Doc. 12-1 at 187, 189. Once NHF asserted that Zier was co-counsel in the bankruptcy case based on the retainer agreement, Derrick promptly signed an amended agreement clarifying that Zier did not represent her in the bankruptcy case. The original retainer agreement simply did not reflect the intent of the parties to it; nor did it reflect the actual conduct of counsel.

Further, Derrick's affidavit does not say that Zier did anything beyond what referring counsel routinely do with bankruptcy counsel without themselves becoming counsel "in" the bankruptcy "case." In the relevant paragraphs, Derrick states she "communicated with Isidore Yetnikoff directly or indirectly through Larry Zier[] about the progress of [her] efforts to enforce the bankruptcy discharge" and "instructed Larry Zier to communicate with Isidore Yetnikoff as necessary on my behalf, since Larry Zier is a lawyer." Doc. 41 at 12. This is consistent with Zier referring his client to Yetnikoff

- 13 -

and communicating with him on matters that related to their respective representations of Derrick.  It followed from Zier's responsibilities in the state court action.  But it was not sufficient to bring him within the obligations of § 329.

In light of the undisputed evidence and the actual course of conduct, it was clear error to conclude from the retainer agreement or the Derrick affidavit that Zier represented Derrick "in" the bankruptcy "case" or that he agreed to be paid any compensation for it.

IT IS THEREFORE ORDERED that the Order Disqualifying Counsel for Debtor (Bankr. Doc. 196) is reversed.  The Clerk shall enter judgment accordingly and shall terminate this case in this court.

Dated this 15th day of January, 2014.

Neil V. Wake
United States District Judge

- 14 -